**Sheinman v. Cohen**

262

*Seymour Kantner*, for plaintiff.
*Mark A. Koval*, for defendant.

TAKIFF, *J.*, April 21, 1977—On January 27, 1977, plaintiff, Ned. H. Sheinman, t/a C.D.H. Sherett Furniture Co., filed a complaint in equity seeking to enjoin defendant, Louis Cohen, from contacting, selling or interfering with plaintiff's customers and seeking an accounting of all orders, sales and monies received on account of defendant's business dealings with plaintiff's customers. The complaint alleged that plaintiff had entered into an employment contract with defendant, which contract contained a covenant restricting defendant from competing after termination of employment. It was further alleged that defendant unilaterally terminated his employment and thereafter began to compete with plaintiff. Defendant answered and specifically denied the validity of the restrictive covenant set forth in the employment agreement.

After hearing, stipulated by the parties as final, we enter the decree nisi pursuant to Pa.R.C.P. 1517(a) and adjudication as hereafter set forth.

## ISSUES

These issues are raised by the pleadings and evidence for determination:

1) Whether the covenant not to compete, which was executed after the initial taking of employment, was made for adequate consideration and is otherwise enforceable.

2) Whether plaintiff is entitled to injunctive relief for defendant's alleged wrongful use of confidential information, customer lists, or trade secrets.

3) Whether plaintiff suffered monetary damages as the result of wrongful conduct on the part of defendant.

## DISCUSSION

Post-employment restraints are enforceable where they are ancillary or incident to an employment relation between the parties to the covenant, the restrictions are reasonably necessary for the protection of the employer, and the restrictions are reasonably limited in duration and geographic extent: See John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc., 471 Pa. 1, 369 A. 2d 1164 (1977); Sidco Paper Co. v. Aaron, 465 Pa. 586, 351 A. 2d 250 (1976); Girard Investment Co. v. Bello, 456 Pa. 220, 318 A. 2d 718 (1974); Bettinger v. Carl Berke Assocs., Inc., 455 Pa. 100, 314 A. 2d 296 (1974); Jacobson & Co. v. International Environment Corp., 427 Pa. 439, 235 A. 2d 612 (1967).

"Where the restrictive covenant is ancillary to a contract establishing an employment relationship, where none existed previously thereto, the employment constitutes consideration supporting that

covenant, as well as all other terms of the employment contract." Barb-Lee Mobile Frame Co. v. Hoot, 416 Pa. 222, 225-226, 206 A. 2d 59 (1965). This does not mean that the restrictive covenant must necessarily be executed simultaneously with the initial taking of employment, e.g., Jacobson & Co. v. International Enviroment Corp., supra. But where a restrictive covenant is executed subsequent to the initial employment, such covenant is not ancillary to the taking of employment, and therefore unenforceable, unless there has been a change in employment status or the covenant is supported by other new consideration. See John G. Bryant Co. v. Sling Testing & Repair, Inc., supra; George W. Kistler, Inc. v. O'Brien, 464 Pa. 475, 347 A. 2d 311 (1975); Maintenance Specialities v. Gottus, 455 Pa. 327, 314 A. 2d 279 (1974); Jacobson & Co. v. International Environment Corp., supra.

In the present case, defendant was employed by plaintiff under an oral contract from November 1975 to January 3, 1977. On January 3, plaintiff presented defendant with a written contract which contained a restrictive covenant. Under this new contract defendant continued in the same position with the same duties and responsibilities as under the oral contract. The new contract maintained the same commission formula but reduced or eliminated certain other benefits previously provided. Under these circumstances the contract of January 3, 1977, did not present a change in employment status or provide new consideration sufficient to support the restrictive covenant.

Plaintiff argues that continuation of defendant's employment was adequate consideration to support the terms of the employment contract. While our research has not disclosed any Pennsylvania

case directly on point, four Justices of our Supreme Court have recently expressed the view that "[a]n employee's continued employment is not sufficient consideration for a covenant not to compete which the employee signed after the inception of his employment, where the employer makes no promise of continued employment for a definite term." Maintenance Specialties, Inc. v. Gottus, 455 Pa. 327, 333, 314 A. 2d 279 (1974) (concurring opinion, Jones, *C.J.*, joined by Eagen, Pomeroy, Nix, *JJ.*). See also George W. Kistler, Inc. v. O'Brien, 464 Pa. 475, 347 A. 2d 311 (1975). Since the new contract does not indicate employment for a definite term we conclude that the restrictive covenant is unenforceable for lack of consideration, aside from its other infirmities such as reasonable restriction as to time and place.

Notwithstanding the absence or unenforceability of a restrictive covenant, however, an employer is entitled to protection against competitive use of information acquired by employes as a result of positions of trust: Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A. 2d 838 (1957); Macbeth-Evans Glass Company v. Schnelbach, 239 Pa. 76, 86 Atl. 688 (1913).

In Macbeth-Evans, supra, the court said:

"It may now be accepted as settled law, under the authority of English and American cases, that courts of equity if the facts warrant will restrain an employee from making disclosure or use of trade secrets communicated to him in course of a confidential employment. The character of the secrets, if they be peculiar and important to the business, is not material. They may be secrets of trade, or secrets of title, or secret processes of manufacture, or

any other secrets important to the business of the employer. They, however, must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged, nor even the same secrets as those sought to be protected, if they be discovered by the independent investigation of outside parties. The duty of the servant not to disclose the secrets of the master may arise from an express contract, *or it may be implied from their confidential relations.*" Supra, p. 85 (Emphasis supplied.)

In Morgan's Home Equipment Corp. v. Martucci, supra, the court reaffirmed the above principle and added:

"In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent a material investment of employers' time and money. This information is highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, *independent of a non-disclosure contract*, either under the law of agency or under the law of unfair trade practices." Supra, at 623 (Emphasis supplied.)

In the present case the so-called "customer lists" and the credit experience continuously developed in connection therewith are secrets important to the business of plaintiff. They constituted a major asset of the business purchased by plaintiff in November, 1975. The customer lists indicate not only the identity of the customers but also buying history and credit position. In short, the customer

lists reveal which are the "good accounts" and which are not. Defendant had serviced plaintiff's customers for many years and was in a position to learn this valuable information and any changes or modifications as to the customers with the passage of time and the developing buying patterns and habits. We conclude that defendant wrongfully used this confidential customer information to his own advantage by soliciting certain of the "good" customers of his former employer.

Defendant has cited Colteryahn Dairy v. Schneider Dairy, 415 Pa. 276, 203 A. 2d 469 (1964), for the proposition that customer lists do not constitute a "trade secret." In Colteryahn it was held that route listings in the retail dairy industry could not be considered as trade secrets so as to enjoin their use under common law principles. This case is clearly distinguishable. As the court in Colteryahn itself recognized, "[t]he type and extent of contact between the company and customer varies sufficiently between the retail dairy industry and the door-to-door installment selling of household articles." In addition, the court recognized that the presence of a restrictive covenant was indicative of the confidential nature of the data sought to be protected. The present case not only involves door-to-door installment sales but also a restrictive covenant which, even though unenforceable, confirms the mutually acknowledged confidentiality of the customer information.

In spite of defendant's wrongful conduct, however, plaintiff has failed to establish damages with any degree of certainty. Although plaintiff alleges that some of his customers failed to make payments to him, the proof was insufficient to link defendant's conduct with this loss or to ascertain the

amount thereof. As for the alleged loss of goodwill, the figure testified to by plaintiff was pure speculation and not supported by any evidence.

There was, however, testimony by defendant that up until the time of the last hearing on this matter, he had made sales of approximately $3,000 and collected approximately $800. Defendant also testified that he expected to make a profit of $1,000. Although the actual amount of profit to be made is speculative at this juncture, the testimony established that defendant should be required to account for profits obtained from the solicitation of those customers of plaintiff Sheinman who became known to defendant by reason of employment with plaintiff or his predecessor from whom the route had been purchased: Morgan's Home Equipment Corp. v. Martucci, supra.

## CONCLUSIONS OF LAW

1. The covenant not to compete is unenforceable for lack of consideration.

2. Plaintiff is entitled to injunctive relief for defendant's wrongful use of confidential customer information by soliciting the customers of his former employer.

3. Plaintiff has not shown monetary damages for loss of good will or for failure by customers to make installment payments but is entitled to an accounting for profits obtained from the solicitation of and sales to those customers who were known to defendant and who were indebted to plaintiff on installment purchase transactions as of the date of termination of defendant's employment.

## DECREE NISI

And now, April 21, 1977, defendant Louis Cohen is enjoined for one year from selling to or otherwise soliciting for installment sale those customers of plaintiff who were listed in the records of plaintiff with open, unpaid debit balances at the time defendant terminated employment. Defendant shall also account to plaintiff for all net profits from sales effected by him for his own account to those customers of plaintiff who had open, unpaid debit balances due and owing to plaintiff as of the date of termination of his employment by plaintiff. Such statement of account shall be submitted to plaintiff, together with payment of the net profits, if any, derived therefrom, within six months from the date of final decree. At the time of statement of account submission, defendant shall make available for inspection by plaintiff or his representative all purchase, sales and collection records in support of such account.

The prothonotary is directed to file this adjudication of record and to forthwith give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days after notice has been given of the filing of this adjudication, the decree nisi shall be entered by the prothonotary, on praecipe, as the final decree.